

Office: (954) 766-8826  
Fax: (954) 509-0007

11760 W. Sample Road, #103  
Coral Springs, Florida 33065

**Confidential Forensic Psychological Evaluation**

| | |
|---|---|
| **Examinee's Name:** | James Tucker Kornhauser |
| **Case #:** | 23-20377-CR-Bloom/Otazo-Reyes |
| **Judge:** | Beth Bloom |
| **Defense Attorney:** | Brett M. Schwartz, Esquire |
| **Evaluation Date:** | 04-13-24 |
| **Report Date:** | 04-15-24 |
| **Examiner:** | Michael P. Brannon, Psy.D. |

**Referral Information:** Mr. James Tucker Kornhauser was evaluated at the request of his attorney, Mr. Brett Schwartz, for a sex offender risk assessment with risk reduction strategies if clinically indicated. He is charged with one count of Possession of Child Pornography. He was evaluated on the above date via the Zoom platform from his parent's residence in Georgia. The reader of this report is referred to this examiner's prior evaluation of the examinee dated 11-12-23 for additional clinical information.

**Sources of Information:**

    Clinical Interview  
    Mental Status Examination  
    Indictment  
    Federal Bureau of Investigation Transcribed Interview  
    Penalty Sheet  
    Telephone Interview with the Examinee's Parents (November 2023)  
    Millon Clinical Multiaxial Inventory – Fourth Edition (MCMI-IV)  
    STATIC-99R  
    STABLE 2007  
    Polygraph Examination Results by Dr. John Palmatier  
    Forensic Psychological Evaluation by Dr. Michael P. Brannon (2023)  
    Psychopathic Personality Inventory-Revised (PPI-R)

**Notification of Confidentiality Limitations:** The examinee was informed of the purpose of the current assessment and the limitations of its confidentiality, and he agreed to participate in the evaluation. He was encouraged to be honest when responding to examiner inquiries and when completing psychological testing.

**Relevant History:** The examinee reported that he is 32 years of age and that he was born in New York on 09-06-91. He stated that he was raised by his mother and father along with two brothers and two half-sisters. He reported that he was sexually abused on one occasion during his childhood by "an older kid from my neighborhood." He reported that he never observed domestic violence in his childhood home. He reported a good relationship with all of his family members. He described his childhood as "happy until about 12 or 13 years old." He revealed a

family history of mental health problems. He was not aware of any family history of drug/alcohol abuse.

Academically, the examinee reported that he completed high school and "some college." He stated that he earned average to above-average grades in mainstream and advanced placement classes in high school. He reported that he was never retained at a grade level. He did not report any behavioral problems in school, although he revealed problems due to hyperactivity and inattentiveness. He related that he was diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD) while he was in elementary school and was prescribed Adderall (stimulant medication for ADHD) for the symptoms of that condition. He reported that he was the victim of bullying and excessive teasing by his peers from 8th grade to 10th grade.

The examinee reported that he has never been married. He stated that his longest romantic relationship lasted for "three to four" years. He related that his last involvement in a romantic relationship was "about 10 years ago." He did not report any incidents of domestic violence during his relationships. He stated that he does not have any children. He reported that he was residing in Georgia with his parents and older brother at the time of this assessment. He related that he has never been homeless.

Occupationally, the examinee reported that he was unemployed at the time of this assessment. He related that he was last employed in a full-time job "a few years ago." He reported that his longest job lasted for "a couple of months." He stated that he was fired from one job due to attendance problems. He indicated that he has never received Social Security disability or unemployment benefits. He reported that he has never served in the military.

Legally, the examinee reported that he was never arrested before the current charges. He stated that he was never a member of a delinquent youth gang or cult, and he has never associated with a known member of those groups.

Socially, the examinee reported that he has several "online friends." He stated that he mostly remains in his room and he previously communicated with others through the Internet. He stated that his last in-person contact with a friend was "one time for a quick lunch in 2022." Recreationally, he enjoys "making 3D computer art on my computer."

Regarding his mental health history, the examinee reported that he has been psychiatrically hospitalized on numerous occasions with his last placement occurring in 2021. He stated that he has been prescribed psychotropic medication since he was a child, and he was taking Abilify (antipsychotic), Depakote (mood stabilizer), Concerta (stimulant for ADHD), Neurontin (anticonvulsant), Ramelteon (sedative for insomnia), and Prozac (antidepressant) at the time of this assessment. He stated that he has attempted suicide several times with his last attempt occurring in 2021. He related that he has purposefully cut himself several times without the intent to commit suicide. He stated that he has been diagnosed with Schizophrenia, ADHD,

Obsessive Compulsive Disorder (OCD), anxiety, and depression. He did not report symptoms of mania. He revealed numerous symptoms of depression and anxiety. He related that he has experienced severe obsessions and compulsive behaviors as well as several panic attacks. He reported that he has experienced auditory hallucinations since he was a teenager, mostly consisting of "voices talking about me and criticizing things that I was doing." He reported a history of delusional beliefs, mostly involving paranoid themes. For example, he stated that he believed that people were "hacking into my computer and watching me on my webcam." He did not report any symptoms of posttraumatic stress. He did not report anger control problems.

The examinee acknowledged the use of alcohol, marijuana, LSD, and "designer stimulants." He reported that he initially used drugs and alcohol when he was a teenager. He stated that he was using "designer stimulants" that he obtained from the "Dark Web" daily at the time of the alleged offenses in 2019. As a result, he reported that his memory is "cloudy" for the events in 2019 that led to his arrest in 2023. He related that his last use of drugs was in 2022. He related that he currently uses alcohol at a rate of "once every two to three months." He stated that he has been medically hospitalized several times due to his abuse of drugs. He related that he has mostly used drugs and alcohol when alone. He reported that he has often used drugs and alcohol to alleviate emotional distress. He stated that he has suffered several blackouts due to his abuse of drugs and alcohol. He identified his mother as his primary source of support in the community. He related that he completed a 28-day residential substance rehabilitation program in "2015 or 2016." He reported that he has never engaged in problematic gambling behaviors.

Medical health was reported as remarkable due to high cholesterol. He related that he does not suffer from any other medical problems. He stated that he has never suffered a head injury.

**Mental Status Examination:** The examinee was appropriately groomed and he was attired in casual clothing. He reported his height as 5'10" and his weight as 190 pounds. Activity levels were within normal limits with no apparent impairments. He was able to state his name, date, and current location. His general clinical presentation was cooperative and his demeanor was serious. He remembered this examiner from a prior evaluation in 2023. Eye contact was direct and unremarkable. Memory functions were intact on brief measures of those cognitive skills. Responses to examiner inquiries were appropriate in volume, pacing, and word production. He expressed his emotions in a full range and his mood was congruent with the content of the assessment. Functional intelligence was grossly estimated in the High Average range based on his reported educational attainment, use of vocabulary, and general fund of knowledge. He did not display any indications of active hallucinations or delusions. Judgment and problem-solving skills were good, and insight was fair. He was not suggestible at any time during the assessment. He did not report suicidal or homicidal ideations or plans.

**Collateral Interviews:** In a telephone interview in November of 2023 with the examinee's parents, Mr. Richard Kornhauser and Ms. Kristie Kornhauser, they reported that their son was full-term at birth and did not require hospitalization after delivery. They reported that he achieved developmental milestones behind schedule, especially verbal skills. As a result, they

related that he was placed into speech therapy classes beginning when he was three years of age and through middle school. They reported that he was diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD) when he was in 4th grade and was prescribed psychotropic medication for that condition when he was in 7th grade. They related that their son had a small group of friends during his childhood. They stated that he "didn't like being touched as a child" and had problems with changes in his routines during his childhood. They reported that as an adult, their son informed them that he had been sexually abused as a child by an unidentified adult male. They stated that their son achieved "decent grades" in school and he completed high school and one semester of college. They reported that he did not display behavioral problems in high school. Occupationally, they related that he was employed in two short-term jobs at fast-food restaurants. They reported that his only romantic relationship was "with a girl in high school." They indicated that he has mostly resided in their home throughout his adulthood. They related that he does not have any current friends and they stated, "Socializing with other people is hard for him… he likes to keep his distance because he is uncomfortable around people." They reported that their son experienced problems in school in 2006 which teachers labeled a "psychotic break." They responded by bringing their son to the pediatrician, although he did not believe that their son had experienced a "psychotic break." They reported that they also consulted with a psychiatrist at that time who recommended the prescription of Risperdal (antipsychotic), although they declined to give their son that medication due to the psychiatrist not providing a diagnosis for their son. They stated that their son began to "self-medicate" with substances that he "found online, but we didn't know about it then." They reported that he participated in individual counseling sessions in 2009, and again from 2012 to 2013. They stated that he had another "psychotic break" while in his first semester of college in 2015. They related that he began treatment with another psychiatrist at that time. Additionally, they reported that their son attended specialized treatment for Obsessive-Compulsive Disorder (OCD) from 2015 to 2016. They revealed that he was psychiatrically hospitalized on four occasions with his first placement occurring in 2016 and his last placement occurring in 2020. They reported that he was diagnosed with Schizophrenia when he was hospitalized and he was prescribed antipsychotic medication at those times. They reported that their son has attempted suicide on three occasions with his most recent attempt occurring in 2022. They stated that he has also experienced auditory hallucinations and paranoid delusions. They reported that he is currently prescribed Abilify (antipsychotic via monthly injections), Wellbutrin (antidepressant), Prozac (antidepressant), Depakote (mood stabilizer), and Concerta (stimulant for ADHD). They stated that their son has displayed anger control problems, although they have not observed him engage in acts of aggression toward others. They related that he has not displayed problems complying with established rules and regulations. They revealed a family history of mental health problems (examinee's maternal great aunt, examinee's maternal uncle), They reported that their son has been mostly medication compliant, although he has had occasional medical side effects from those medications. They were aware that their son has abused alcohol and drugs including "online stimulants." Medically, they reported that he has suffered from gastrointestinal problems. They were not aware of him suffering a head injury or any other neurological difficulties. They indicated that they would remain supportive of their son throughout his current legal situation and in any future treatment endeavors.

Michael P. Brannon, Psy.D.
11760 W. Sample Road, Suite 103 Coral Springs, FL 33065

**Collateral Mental Health Document:** In a forensic psychological evaluation by this examiner dated 11-06-23, it was concluded as follows:

> "The examinee reported numerous symptoms of several major mental disorders. He also revealed a history of drug and alcohol abuse. Psychological testing resulted in findings consistent with the examinee's self-reported symptoms including psychotic symptomatology. Validity testing designed to assess for response distortion did not reveal any indications of poor effort or malingering. In a telephone interview with the examinee's parents, they reported that their son has suffered from mental health problems since elementary school, and he has received ongoing psychiatric and psychological treatment services, including four psychiatric hospitalizations. They further indicated that their son rarely leaves their house due to the debilitating effects of his severe mental health disorders. Moreover, the examinee has had few friends, and his current social contacts consist of Internet interactions only. Notably, the examinee's mental health condition is fragile, he has been suicidal in the past on several occasions, and psychological testing revealed severe levels of hopelessness.
>
> Based on the information available for this assessment, it is the opinion of this examiner that the examinee would be an appropriate candidate for weekly individual counseling sessions via the Zoom platform. Treatment should ideally focus on emotional regulation, medication compliance, anxiety reduction, goal-setting, and relapse prevention. He should also be required to attend monthly psychiatric case management services and comply with all prescribed psychotropic medications. Moreover, he would benefit from participation in recovery group meetings several times per week via the Zoom platform. The examinee should be regularly monitored for possible suicidal ideations by all of his designated mental health professionals with placement into a psychiatric hospitalization for stabilization if clinically indicated. The examinee did not display any factors that would prevent him from benefitting from treatment services as outlined above."

**Psychological Testing:** The Millon Clinical Multiaxial Inventory –Fourth Edition (MCMI-IV) is one of the most frequently utilized personality tests in forensic and clinical settings. It contains several Validity scales to assess for possible response distortion and numerous Clinical scales to assess for the possible presence of major mental disorders. Additionally, the MCMI-IV provides extensive information on an individual's personality that might be of assistance in determining treatment appropriateness. Validity scales did not reveal any significant elevations on test scales designed to assess for random responding, fabrication, or defensiveness. As a result, Clinical scales were determined to be valid and therefore interpretable. Clinical scales revealed significant elevations for Schizoid (unusual perceptions and behaviors), Generalized Anxiety (pervasive feelings of nervousness, worry, and dread), Somatic Symptoms (numerous medical complaints), Drug Abuse (chronic abuse of drugs), and Major Depression (severe and debilitating symptoms of depression).

The Psychopathic Personality Inventory-Revised (PPI-R) is a self-report measure designed to assess for the presence of traits associated with psychopathic personality. Individuals scoring high on this test tend to be callous, self-centered, and manipulative in their relations with others. In addition, they tend to display higher rates of aggression and deficits in their ability to empathize with others. The PPI-R includes Validity Scales and Content Scales. Validity scales did not indicate that the examinee was attempting to present in an overly positive light or endorse bizarre items in an attempt to fabricate symptoms. Results from Content Scales and the PPI-R Total Score indicate that the examinee does not show personality traits associated with a psychopathic personality.

**Current Allegations:** The Indictment stated that the examinee was charged with one count of Possession of Child Pornography for an incident that allegedly occurred on or about 11-13-19.

In a Federal Bureau of Investigation transcribed interview dated 11-13-19, the examinee initially stated that he "did not recall" uploading any images of child pornography to a web-based application ("Imgur"). He advised that he had seen images that "may have been child pornography" via Google and subsequently admitted to utilizing "Freenet" to obtain child pornography. A search of the examinee's computer led to the discovery of a downloads folder that contained several images that appeared to depict child erotica and child pornography. Specifically, it was stated, "Some of the images appeared to be focused on the exposed nude genitals of one or more prepubescent or early pubescent female children." Special agents estimated that the children observed in the child pornography were between 8 and 12 years of age, although the examinee expressed his belief that they were between 12 and 15 years of age. He claimed that he had not viewed child pornographic material that contained toddlers or infants. He indicated that he did not frequently utilize "Freenet" to obtain child pornography, although he admitted to doing so "every once in a while." The examinee was reported to have acknowledged that looking at child pornography was a crime. It was noted that the examinee denied producing child pornography or engaging in sexual activities with children multiple times throughout the interview.

**Psychosexual History:** The examinee reported that he was involved in sex education classes when he was in middle school. He stated that he never spoke to either of his parents about sex. He did not remember if he had ever spoken to any of his male friends about sex during his teenage years. He stated that he initially masturbated when he was 12 years of age. He did not reveal any problematic patterns regarding masturbation such as excessiveness or inappropriate locations. He reported that his first sexual contact with another person that did not include intercourse occurred when he was "15 or 16" years of age. He related that his first sexual contact with another person which included sexual intercourse occurred when he was 17 years of age. He stated that he has been involved in sexual activities with 10 females in his life. He reported that he was never involved in multiple-partner sex. He identified his sexual orientation as exclusively heterosexual. He reported that he never forced or coerced another individual into sexual activities. He reported that he never used drugs or alcohol to facilitate sexual activities with a person who initially refused to engage in sex. He stated that he has never visited a "strip club" or

an adult book/video store. He related that he never exposed his genitalia to a non-consenting adult for sexual arousal (exhibitionism). He indicated that he never viewed a non-consenting adult engaged in sexual activities or undressing for sexual arousal (voyeurism). He reported that he has never engaged in consensual sexual activities involving physical pain or humiliation of himself or another person (sadomasochism). He related that he has never utilized the services of an escort or prostitute. He stated that he was never involved in a paid massage that included sexual activity. He stated that he has never purposefully touched the genitals of another person and pretended that it was accidental (frotteurism). He did not report engaging in any sexual activities involving animals of another species (bestiality). He did not report any sexual activities involving feces or urine (coprophilia, urolagnia). He reported that he was never involved in any consensual sexual activities that involved choking himself or another person (erotic asphyxiation).

The examinee reported that he initially viewed online adult pornography when he was 12 years of age. He reported that he has masturbated to adult pornography online on numerous occasions. He stated that he viewed adult pornography daily from 2017 to 2019. He reported that his preferred categories of adult pornography have been "anime," "CFNM," and "amateur." He reported that he has never been in a paid sex webcam room. He stated that he has sent and received naked images via cellular telephone and the Internet. He stated that he never engaged in a conversation regarding sex with a juvenile online or in person since he was 18 years of age and older. He reported that he has never spoken to another adult in person or online regarding sexual activities with juveniles since he was 18 years of age and older. He reported that he has not been employed in a job or volunteered for an activity that involved frequent contact with juveniles. He reported that he has never been sexually attracted to prepubescent children. He reported that he has never masturbated to images or fantasies of prepubescent children. He stated that he has never engaged or attempted to engage in sexual activities with an individual under the age of 18 since he was 18 years of age and older. He stated that he has never taken a video or picture of a juvenile in the community for sexual purposes. He reported that there has never been a complaint regarding his sexual behavior or statements. He reported that he has never belonged to an organization or group that endorsed sexual behaviors between adults and juveniles. He reported that he has never consistently experienced sexual performance problems such as premature ejaculation, erectile difficulties, or loss of sexual desire.

**Collateral Document:** In a polygraph examination by Dr. John Palmatier, he reported questions and answers on an initial examination as follows:

1. As an adult, after entering college did you ever use any media to schedule a sexual interaction with someone under 18 years of age?
   Answer – NO
2. As an adult, after entering college did you ever have any type of sexual interaction with someone under 18 years of age?
   Answer – NO

---

Michael P. Brannon, Psy.D.
11760 W. Sample Road, Suite 103 Coral Springs, FL 33065

3. You say that as an adult you have not tried or had a sexual interaction with someone under 18 years of age, is that true?
   Answer – YES

Based on the examinee's responses to the above questions, Dr. Palmatier stated that there were no significant physiological reactions by the examinee and he concluded as follows:

"The statistical probability that Mr. Kornhauser's test data were produced by a deceptive person using non-attenuated data (i.e., SCR/EDR data in raw mode) was less than one-tenth of one percent (i.e., < 0.1%) (p < 0.001). Consequently, using the ZOC paradigm, the overall probability that Mr. Kornhauser was truthful when answering the above questions could be 'roughly' estimated to be 99.9% or greater."

On a second set of questions and answers, Dr. Palmatier reported the following:

1. Answer truthfully, as an adult, after entering college did you ever use any media to schedule a sexual interaction with someone under 18 years of age?
   Answer – NO
2. Answer with a lie, as an adult, after entering college did you ever use any media to schedule a sexual interaction with someone under 18 years of age?
   Answer – YES
3. Answer truthfully, as an adult, after entering college did you ever have any type of sexual interaction with someone under 18 years of age?
   Answer – NO
4. Answer with a lie, as an adult, after entering college did you ever have any type of sexual interaction with someone under 18 years of age?
   Answer – YES
5. Answer truthfully, you say that as an adult you have not tried or had a sexual interaction with someone under 18 years of age, is that true?
   Answer – YES
6. Answer with a lie, you say that as an adult you have not tried or had a sexual interaction with someone under 18 years of age, is that true?
   Answer – NO

Dr. Palmatier found no significant physiological reactions by the examinee when responding to the second set of questions, and he concluded as follows:

"The statistical probability that Mr. Kornhauser's test data were produced by a deceptive person using non-attenuated data (i.e., SCR/EDR data in raw mode) was once more less than one-tenth of one percent (i.e., < 0.1%) (p < 0.001). Consequently, using the DoD paradigm, the overall probability that Mr. Kornhauser was truthful when answering the above questions could be 'roughly' estimated to be 99.9% or greater."

Dr. Palmatier concluded his findings for both sets of questions and answers as follows:

> "Given these results, it is the opinion of this examiner based on two separate examinations and the use of two different paradigms that TUCKER KORNHAUSER WAS BEING TRUTHFUL when answering the above questions."

**Sexual Offender-Specific Risk Analysis:** Several static (unchanging) factors were considered regarding the examinee's risk for sexual reoffending. These items were adapted from the Child Pornography Offender Risk Tool (C-PORT; Seto & Eke, 2015). The C-PORT has been empirically cross-validated by Eke and colleagues (2019), although subsequent research has found that the risk percentages offered in the manual tended to overestimate the risk for sexual reoffending for individuals accused of child pornography offenses only (no touch offense or attempt at a touch offense). Additionally, the re-offense rates have remained consistently low for sexual reoffending for this population, resulting in relatively small numbers for standardization samples. Therefore, the risk factors for the C-PORT were used in the current analysis of future risk, although the percentages listed in the manual were not provided for the reasons cited above. Notably, all of the items (7) in the C-PORT manual have been cross-validated as relevant factors in assessing the risk of sexual reoffending for individuals who have committed child pornography offenses. The factors utilized for the current risk assessment were as follows: Age, Criminal History, Failure on Conditional Release, Any Contact Sexual Offending, Pedophilic or Hebephilic Interests, More Boy Than Girl Child Pornography Material, and More Boy Than Girl Content in the Nude/Other Child Material. The examinee displayed C-PORT risk factors as follows: *Age and Failure on Conditional Release.* Notably, the category of Pedophilic or Hebephilic Interests was scored utilizing the Correlates of Admission of Sexual Interest in Children (CASIC), contained in the C-PORT manual. Additionally, the category of Any Contact Sexual Offending was scored utilizing the polygraph examination by Dr. John Palmatier summarized in the current report.

The STABLE 2007 is an actuarial instrument developed for assessing dynamic (subject to change) factors associated with future sex-offending behavior for an identified offender. *The following actuarial analysis is only valid if the current allegations are accurate as charged.* The examinee's STABLE 2007 scores were as follows:

| | |
|---|---|
| Significant Social Influences | 0 |
| Capacity for Relationship Stability | 1 |
| Emotional Identification with Children | 0 |
| Hostility Towards Women | 0 |
| General Social Rejection/Loneliness | 1 |
| Lack of Concern for Others | 0 |
| Impulsive Acts | 2 |
| Poor Cognitive Problem-Solving | 0 |
| Negative Emotionality/Hostility | 0 |
| Sex Drive/Preoccupation | 1 |

---

Michael P. Brannon, Psy.D.
11760 W. Sample Road, Suite 103 Coral Springs, FL 33065

| | |
|---|---|
| Sex as Coping | 0 |
| Deviant Sexual Interests | 1 |
| Cooperation with Supervision | 1 |

**Additional Factors for Consideration:** The examinee did not display any indications of antisocial or psychopathic personality traits during the clinical interview or on psychological testing. This information was corroborated in a telephone interview with the examinee's parents. Research has consistently revealed that the presence of antisocial and psychopathic personality traits increases the probability of recidivism and reduces the prognosis of a successful treatment outcome.

The examinee has adequate support from family members. This information was corroborated in a telephone interview with the examinee's parents. Research has consistently shown that individuals with more social support complete treatment more often and sexually re-offend at lower rates.

**Conclusions:** Based on an analysis of empirical risk factors for sexual reoffending for the C-PORT and STABLE-2007, it is the opinion of this examiner that the examinee poses a **low risk** of sexual reoffending in the foreseeable future. Polygraph testing did not reveal any indications of deception when the examinee reported that he had never engaged or attempted to engage in sexual contact with a juvenile. Psychological testing revealed indications of a thought disturbance, emotional distress, and somatic concerns. There were no indications of feigning mental illness on test Validity scales (see prior evaluation for additional testing information). In a telephone interview with the examinee's parents, they corroborated that their son has an extensive history of several mental health problems and a variety of psychological and psychiatric treatment interventions.

Research that was relied on for this analysis is contained in the C-PORT manual by Seto & Eke, 2015, and the United States Federal Sentencing Guidelines Commission (2012, 2021). In the most recent research by the United States Federal Sentencing Guidelines Commission (2021), child pornography offenders had an overall sexual recidivism rate of 4.3% over three years. Specifically, over three years, child pornography offenders were re-arrested for a contact sexual offense at a rate of 1.3% and for a non-contact sexual offense (child pornography) at a rate of 3.3%.

If the current allegations are accurate as reported, the examinee would be an appropriate candidate for placement into weekly sexual offender rehabilitation groups at a program such as REACH at the Clinical and Forensic Institute. He also would benefit from intensive outpatient treatment consisting of mental health and substance rehabilitation services at a program such as LifeSkills in Delray Beach Florida. He did not display any factors that would prevent him from benefitting from treatment services as outlined above. Research has revealed that sexual offender treatment has a modest yet significant effect on reducing rates of sexual reoffending.

Thank you for the opportunity to participate in this interesting case, and please feel free to telephone me if you require additional information in this matter.

**Michael P. Brannon, Psy.D.**
Licensed Psychologist
PY4289